[Civ. No. 4058.   Third Appellate District.—April 28, 1930.]

B. Z. McKINNEY, as Trustee, etc., Respondent, v. SARAH E. WRIGHT et al., Appellants.

A. J. Bledsoe and Oliver O. Clark for Appellants.

Clyde C. Downing, Scarborough, Forgy & Reinhaus, and Preston Turner for Respondent.

PLUMMER, J.—The plaintiff had judgment in an action brought by him as trustee of the estate of Thomas Wright, bankrupt, against Sarah E. Wright, wife of said bankrupt, and Edith Lillian Salter, daughter of said bankrupt, in an action prosecuted to set aside conveyances: First, one made by the bankrupt to Sarah E. Wright, and, second, one made by Sarah E. Wright to Edith Lillian Salter. From this judgment the defendants appeal.

The real estate is described in the complaint.

On the nineteenth day of January, 1925, the minor son of Thomas Wright and Sarah E. Wright, to wit, Thomas Wright, Jr., was the driver of an automobile which was involved in an accident wherein Aurilla A. Edson and Roxanna J. Archer were injured. Thomas Wright, Sr., had, prior to the accident, signed the application for a driver's license in favor of his said minor son, Thomas Wright, Jr.

On the twenty-fifth day of May, 1925, Thomas Wright and Sarah E. Wright, his wife, one of the defendants herein, by deed, purported to convey a one-half interest in the property described in the complaint to Sarah E. Wright. On May 11, 1926, judgment was rendered in the Superior Court of Orange County in favor of Aurilla A. Edson against Thomas Wright in the sum of $800 and costs, and on July 21, 1926, judgment was rendered in the Superior Court of Orange County in favor of Roxanna J. Archer against Thomas Wright for the sum of $3,260. These judgments were based upon injuries sustained in the automobile accident heretofore referred to as occurring on the nineteenth day of January, 1925, wherein Thomas Wright, Jr., was the driver of one of the automobiles. On the nineteenth day of July, 1926, Sarah E. Wright, one of the appellants herein, conveyed to Edith Lillian Salter, a daughter of

Thomas Wright and Sarah E. Wright, all the property described in the complaint.

On the eleventh day of September, 1926, Thomas Wright was adjudged a bankrupt on a petition which listed as his only creditors Aurilla A. Edson and Roxanna J. Archer. On October 12, 1926, the claims of said Aurilla A. Edson and Roxanna J. Archer were allowed by the referee in bankruptcy of the Estate of Thomas Wright. Thereafter, the plaintiff in this action, as the trustee in bankruptcy of Thomas Wright, brought this action to set aside the conveyances heretofore referred to.

The court, among other things, found that Thomas Wright and Sarah E. Wright were husband and wife and had been such during all the times mentioned in the action; that Edith Lillian Salter was the daughter of Thomas Wright and Sarah E. Wright. The court also found that on the nineteenth day of January, 1925, the said Thomas Wright and Sarah E. Wright were joint owners as tenants in common, with the right of survivorship, and were in possession of the real estate described in the complaint; that on the nineteenth day of January, 1925, the property described in the complaint was all the property, of whatsoever kind or character, owned by the said Thomas Wright. The court further found that on the twenty-fifth day of May, 1925, when the conveyance was made purporting to convey the interests of Thomas Wright in and to said real property to his wife Sarah E. Wright, that Sarah E. Wright had knowledge of the claim for damages of Aurilla A. Edson and Roxanna J. Archer, arising out of the automobile accident occurring on January 19, 1925, and upon which claims judgments were thereafter entered as herein stated; that the conveyance dated May 25, 1925, wherein Thomas Wright and Sarah E. Wright, his wife, purported to convey to Sarah E. Wright all of the right, title and interest in and to the real property described in the complaint, was without consideration, and that said deed of conveyance was made with the intention, and for the purpose of defrauding the creditors of Thomas Wright, to wit, Aurilla A. Edson and Roxanna J. Archer. The court found also that on May 11, 1926, judgment was entered in favor of Aurilla A. Edson against Thomas Wright for the sum of $800, based upon the automobile accident heretofore referred to; that there-

after and on July 19, 1926, Sarah E. Wright, a married woman, made and delivered a purported deed of conveyance of the real property described in the complaint to Edith Lillian Salter, one of the defendants in this action. The court further found that this deed was made without consideration and was made with the intention to and for the purpose of defrauding the creditors of Thomas Wright, to wit, Aurilla A. Edson and Roxanna J. Archer. The court further found that the defendant Edith Lillian Salter was entitled to remove from the premises described a certain dwelling-house estimated to be of the value of about $2,000. The conveyances referred to were directed canceled, and, likewise, a purported mortgage on the premises, whereby Edith Lillian Salter purported to mortgage the same in favor of Sarah E. Wright for the sum of $20,000, was ordered canceled, and declared to be of no force or effect. Other facts were found by the court not necessary to be here mentioned.

While the testimony in this case was elicited only from the defendants when called to the witness-stand to testify under the provisions of section 2055 of the Code of Civil Procedure, we think it establishes beyond question sufficient basis for the trial court to find that no actual consideration passed from Sarah E. Wright to Thomas Wright for the conveyance to her of the interest theretofore owned by Thomas Wright in and to the real property described in the complaint, and likewise justified the trial court in holding that no consideration passed from Edith Lillian Salter to Sarah E. Wright for the conveyance by which Sarah E. Wright purported to transfer to her all of said real property. The testimony also shows that Sarah E. Wright and Edith Lillian Salter knew of the automobile accident in which the two judgment creditors of Thomas Wright were injured, where one of the automobiles was driven by the minor son of Thomas Wright and Sarah E. Wright.

The transcript shows that about 1900 Thomas Wright bought a certain piece of property mentioned in the testimony as the "Broadway property"; that thereafter this property was traded for the property involved in this action. This trade was made some time in the year 1919. That in 1919 the property involved was conveyed to Thomas Wright and Sarah E. Wright as joint tenants, and on the part of

Sarah E. Wright it is claimed that the interest of Thomas Wright was conveyed to her in 1925 for and on account of certain moneys loaned by her to Thomas Wright in 1919. The amount so loaned is alleged to be the sum of $2,650, and that Thomas Wright was to pay eight per cent interest thereon; that no note was executed by Thomas Wright to Sarah E. Wright, or any written instrument signed or executed by Thomas Wright, evidencing such transaction. An examination, however, of the transcript shows that all of this money, except a possible $600 alleged to have been loaned by Sarah E. Wright to Thomas Wright, came out of the community earnings of Thomas Wright and Sarah E. Wright, his wife, $800 being profit on what was called the "Broadway Property," when the deal was made, $1200 being claimed as the interest of Sarah E. Wright in the Broadway property, which had been given to her by Thomas Wright, $1,000 profit on the crops raised on the premises alleged to have been given by Sarah E. Wright to her husband Thomas Wright. The conveyance made by Sarah E. Wright to Edith Lillian Salter purports to have been made for a consideration of $22,000. The facts disclosed, however, show that Edith Lillian Salter and her husband built a dwelling-house on the premises involved, valued at the sum of about $2,000, and executed a mortgage for the sum of $20,000. The judgment in the case permits Edith Lillian Salter and her husband to remove the house from the premises.

The defendant Sarah E. Wright testified that she bought the property, or rather, bought the interest of Thomas Wright to protect herself. After referring to the automobile accident in which Sarah E. Wright stated that she knew thereof, we quote the following: "Q. Mrs. Wright, was there anything said about this action just prior to the time your husband deeded the property to you? A. Why, I knew of it, yes. Q. Did you and your husband discuss that in regard to transferring his property to you? A. Well, because of my interest in the property, and because of my separate property, I bought the property to protect my interest. Q. When you say 'protect your interest,' you mean this present litigation? A. Yes; it is possible, not probable, not likely, but it might interfere." The witness then went on to detail how the money was obtained which went into

the property, and testifies in relation to the money being loaned by her to her husband in 1919, and that in 1925, after the automobile accident in question, this discussion was had and the property conveyed to her. We do not need to set out the testimony, and content ourselves with the simple statement that a reading of it shows that the trial court was justified in holding that no consideration was paid for any of the transfers involved herein; that practically all of the money alleged to have been loaned by Sarah E. Wright to Thomas Wright were the profits realized upon community property owned by them.

We find nothing in the testimony justifying the contention of appellants that in May, 1925, Thomas Wright, pursuant to an agreement entered into years prior thereto, conveyed his interest in the property involved to Sarah E. Wright for a consideration in the sum of $12,500.

█ On the part of the appellants it is claimed that the relation of debtor and creditor did not exist at the time of the transfer of the property involved, made by Thomas Wright to Sarah E. Wright, his wife; that while Thomas Wright was liable to respond in damages for any injury occasioned by the negligence of his son in the automobile accident occurring in January, 1925, he was not, at the date of the transfer of the property in question, to wit, in the following month of May of the same year, a debtor of the two women injured in the accident thereafter adjudged to be due to the negligence of Thomas Wright, Jr. This contention appears to be made without having consulted the decisions of the Supreme Court and of this court relative to the date when one becomes liable to respond in damages, and when the law relative to the existence of the relationship of debtor and creditor finds its inception.

In the case of *Allee* v. *Shay*, 92 Cal. App. 749 [268 Pac. 962, 966], this court had occasion to examine quite thoroughly, and set forth at length, the authorities bearing upon such relationship. That case involved circumstances very similar to the ones we are now considering. A man by the name of Kienzle was the owner of an automobile, and while driving the same on January 4, 1925, he injured a boy by the name of Lee E. West. Some time after the date of the injury, and before judgment had been entered on account of the injury just referred to, Kienzle disposed of all of his

property. Judgment was thereafter entered in favor of West, execution was issued on the judgment, and the property which Kienzle had transferred to one of his relatives levied upon. Thereupon an action was begun against the sheriff to restrain the sale and vacate the levy. The trial court found in favor of the plaintiff in that action, and this court, upon a review of the facts, set aside the judgment and findings of the trial court, and directed judgment in favor of the sheriff and his right to proceed with the execution, the holding of this court being that the rights of the parties dated as of the date of the automobile accident. In the opinion in the Allee case, *supra*, this court said: ''On January 4, 1925, at the instant the automobile driven by Kienzle injured the minor, Lee E. West, a cause of action arose in favor of West against Kienzle, and a claim for damages then and there instantly arose, of which claim J. H. Kienzle then and there had immediate notice. We make this statement upon the authority of *Cioli* v. *Kenourgios*, 59 Cal. App. 690 [211 Pac. 838], and the case of *Chalmers* v. *Sheehy*, 132 Cal. 459 [84 Am. St. Rep. 62, 64 Pac. 709]. In the latter case the opinion quotes from Freeman on Executions, as follows: 'That one having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and, as such creditor, upon recovering the judgment, entitled to void a fraudulent transfer antedating the commencement of his action.' '' We do not need . to quote further from the case of *Alee* v. *Shay*, but will refer to the authorities set out on page 759 of the volume referred to. In the case of *Allee* v. *Shay*, just as appears by the circumstances in the case at bar, no property remained in possession of Kienzle, just as no property remained in the possession of Wright after the date of the purported conveyance to his wife. By that conveyance he rendered himself a bankrupt.

This case, in relation to the appointment of a referee in bankruptcy, comes within the cases of *Hemenway* v. *Thaxter*, 150 Cal. 737 [90 Pac. 116, 117]; *Wolters* v. *Rossi*, 126 Cal. 644 [59 Pac. 143]; *Wills* v. *E. K. Wood Lumber Co., etc.*, 29 Cal. App. 97 [154 Pac. 613]. ▪ Section 3442 of the Civil Code is likewise applicable to this case where it provides that a transfer or encumbrance, without valuable consideration, by a party while insolvent, or in contemplation

of insolvency, shall be fraudulent· and void as to existing creditors. As said in one of the cases to which we have referred, if the act under consideration renders one insolvent, the intent will be inferred that the transfer was made for the purpose of rendering one insolvent, the language in the case of *Hemenway* v. *Thaxter, supra,* in this particular, being as follows: ''The consequence of this conveyance being, then, to render. Hemenway insolvent, he will be presumed to have intended its natural consequences, from which follows an intent to become insolvent, or contemplated insolvency, in the language of the act.'' The record clearly shows that the conveyance by Thomas Wright to his wife purported to divest him of all of his property, and also that this fact was known to all the parties concerned. The petition in bankruptcy filed by Thomas Wright listed as his creditors Aurilla A. Edson and Roxanna J. Archer, and constituted very persuasive ·evidence to be considered by the trial court in determining that the conveyances hereinbefore referred to were made to defeat the claims of creditors.

That the conveyances herein involved come within the provisions of section 3439 of the Civil Code declaring such transfers to be void, we think clearly established, and the trial court could not very well, under the testimony, enter any other judgment than the one from which the defendants have appealed.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.